(C. D. 1205)

BORDER BROKERAGE COMPANY *v.* UNITED STATES

United States Customs Court, First Division

(Decided January 30, 1950)

*Lawrence, Tuttle & Harper* (*Frank L. Lawrence* and *Lawrence A. Harper* of counsel) for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

MOLLISON, Judge: This protest is directed against the action of the collector of customs assessing duty at the rate of 25 cents per square under the Shingles Quota Act of 1940 (54 Stat. 708, 19 U. S. C. § 1332a) on two shipments of red cedar shingles imported from Canada on October 20 and 21, 1947. The protest claim is for free entry of the said shingles under the provision in paragraph 1760 of the Tariff Act of 1930 (19 U. S. C. § 1201, par. 1760) for "Shingles of wood."

The protest has been submitted for decision upon stipulation of counsel reading as follows:

(1) This protest relates to red-cedar shingles imported from Canada and entered for consumption at the subport of Blaine on October 20 and 21, 1947.

(2) The quantity of such imported shingles entered or withdrawn for consumption during the calendar year 1947 was 1,941,427 squares, and of that quantity 1,169,379 squares were imported not later than August 15, 1947, the date when Proclamation 2708, October 25, 1946, 3 CFR 1946 supp., p. 74, TD 51565, was terminated by Proclamation 2735, 3 CFR 1947 supp., p. 50.

(3) The quantity of red-cedar shingles entitled to exemption from the duty of 25 cents per square imposed by the Shingles Quota Act of July 1, 1940, 54 Stat. 708, 19 USC 1332a, TD 50224, as ascertained by the Tariff Commission and reported to the Secretary of the Treasury for the calendar year 1947, was 1,380,300 squares, as set forth in TD 51658, and that quantity had been imported and entered for consumption or withdrawn from warehouse for consumption by 8 a. m. Pacific standard time, September 23, 1947.

(4) All red-cedar shingles imported during 1947 after the hour and day last stated above were directed by the Treasury Department to be subjected to duty at 25 cents per square under said quota act, and the shingles covered by this protest were accordingly assessed at that rate.

As originally enacted, the Tariff Act of 1930 in paragraph 1760 thereof provided free entry for wood shingles. By the terms of the Canadian Trade Agreement, reported in T. D. 49752, which became effective January 1, 1939, the duty-free status of wood shingles was continued, with a proviso, however, in the following language:

*Provided,* That the United States reserves the right to impose a customs duty, not exceeding 25 cents per square, on any red cedar shingles which may be entered, or withdrawn from warehouse, for consumption in any calendar year after 1938 in excess of a quantity to be specified by the United States, which quantity shall not be less than 30 per centum of the annual average for the preceding three calendar years of the combined total of the quantity of red cedar shingles shipped by producers in the United States and of the quantity of such shingles entered, or withdrawn from warehouse, for consumption (for the purposes of this agreement, such combined total for the calendar year 1936 shall be considered as 7,526,056 squares).

On July 1, 1940, the so-called "Shingles Quota Act of 1940," *supra,* was enacted into law. Later codified as § 1332a of Title 19, U. S. Code, it reads as follows:

(a)   The United States Tariff Commission is directed to conduct an investigation as soon as practicable after the close of the calendar year 1939 and each calendar year thereafter, for the purpose of ascertaining the quantities of red cedar shingles shipped by producers in the United States and the quantities of imported red cedar shingles entered for consumption, or withdrawn from warehouse for consumption, during each of the three calendar years immediately preceding any such investigation.

(b)   If the Commission finds, on the basis of an investigation under subdivision (a) of this section, that in any calendar year after 1938 the quantity of imported red cedar shingles entered for consumption, or withdrawn from warehouse for consumption, was in excess of 30 per centum of the combined total for such year of the respective quantities ascertained in such investigation, it shall so report to the President.   If the President approves the report of the Commission, he shall so proclaim, and on and after the day following the filing of such proclamation with the Division of the Federal Register and so long as any trade agreement entered into under the authority of section 1351 of this title, shall be in effect with respect to the importation into the United States of red cedar shingles, there shall be a duty upon imported red cedar shingles entered for consumption, or withdrawn from warehouse for consumption, in any calendar year in excess of 30 per centum of the annual average for the preceding three calendar years of the combined total of the quantity of such shingles shipped by producers in the United States and of the quantity of such imported shingles entered for consumption, or withdrawn from warehouse for consumption.   The rate of such duty shall be 25 cents per square.   Any duty imposed under this section shall be treated for the purposes of all provisions of law relating to customs revenue as a duty imposed by section 1001 of this title, and shall not apply to shingles entered for consumption before the duty becomes applicable.

(c)   The quantity of red cedar shingles entitled to exemption from any duty imposed pursuant to this section shall be ascertained for each quota period by the Commission and reported to the Secretary of the Treasury.

On August 26, 1940, the President of the United States issued a proclamation approving the report of the United States Tariff Commission on shipments and imports of red cedar shingles "to the end that the duty provided in the aforesaid act approved July 1, 1940, shall be imposed upon such imported red cedar shingles as are subject to duty under that act."   See 76 Treas. Dec. 76, T. D. 50224.

Section 318 of the Tariff Act of 1930 (19 U. S. C. § 1318), under the caption "Emergencies," provides as follows:

Whenever the President shall by proclamation declare an emergency to exist by reason of a state of war, or otherwise, he may authorize the Secretary of the Treasury to extend during the continuance of such emergency the time herein prescribed for the performance of any act, and may authorize the Secretary of the Treasury to permit, under such regulations as the Secretary of the Treasury may prescribe, the importation free of duty of food, clothing, and medical, surgical, and other supplies for use in emergency relief work. The Secretary of the Treasury shall report to the Congress any action taken under the provisions of this section.

The Veterans' Emergency Housing Act of 1946 (60 Stat. 207, 50 U. S. C. App. § 1821–1833) recognized the existence of an emergency shortage of housing, and, acting under the authority of section 318, *supra*, the President of the United States on October 25, 1946, proclaimed as follows:

WHEREAS the long-term housing shortage and the war have combined to create an unprecedented emergency shortage of housing, particularly for veterans of World War II and their families; and

WHEREAS section 1 of the Veterans' Emergency Housing Act of 1946 recognizes the aforesaid unprecedented emergency; and

WHEREAS it is imperative that immediate action be taken on a temporary basis to increase the available supplies of timber, lumber, and lumber products for housing purposes:

Now, THEREFORE, I, HARRY S. TRUMAN, President of the United States of America, under and by virtue of the authority vested in me by the Constitution and laws of the United States, and in particular by section 318 of the Tariff Act of 1930 (46 Stat. 590, 696), do hereby declare an emergency to exist, and do hereby authorize the Secretary of the Treasury to permit, until the termination of the provisions of the Veterans' Emergency Housing Act of 1946, or until the President shall have declared that the emergency declared herein has terminated, whichever shall first occur, under such regulations and subject to such conditions as the Secretary may deem necessary, the importation free of duty of any articles which the Housing Expediter designates and certifies as timber, lumber, or lumber products suitable for the construction or completion of housing accommodations. [Presidential Proclamation No. 2708, 11 F. R. 12695; 81 Treas. Dec. 231, T. D. 51565.]

Pursuant to the provisions of the foregoing proclamation the Housing Expediter designated and certified as a lumber product suitable for the construction and/or completion of housing accommodations—

Red cedar shingles, such as are provided for in paragraph 1760, Tariff Act of 1930, and subject to duty under the act of July 1, 1940 (19 U. S. C. 1332a).

and the Secretary of the Treasury authorized collectors of customs to admit such articles free of duty. T. D. 51565, *supra*.

On June 28, 1947, the President issued a proclamation (No. 2735, CFR 1947 Supp., Titles 1–7, p. 50) amending proclamation No. 2708 "to provide that it shall terminate on August 15, 1947."

Acting pursuant to the provisions of subsection (c) of the Shingles Quota Act of 1940, *supra*, the Tariff Commission ascertained that the quantity of red cedar shingles entitled to exemption from duty during the calendar year 1947 was 1,380,300 squares and reported that quantity to the Secretary of the Treasury, 82 Treas. Dec. 99, T. D. 51658. This quantity, therefore, was the result of a computation under the formula set forth in subsection (b) of said act, based upon the investigations provided for in subsection (a) thereof, i. e., 1,380,300 squares represented—

\* \* \* 30 per centum of the annual average for the preceding three calendar years of the combined total of the quantity of such shingles shipped by producers in the United States and of the quantity of such imported shingles entered for consumption, or withdrawn from warehouse for consumption.

The situation with respect to the red cedar shingles at bar, which were imported on October 20 and 21, 1947, was this: At the time of the termination of proclamation 2708, i. e., August 15, 1947, 1,169,379 squares, or 210,621 squares less than the duty-free quota of 1,380,300 squares, had been imported. The duty-free quota was reached September 23, 1947, and duty was assessed under the provisions of the Shingles Quota Act on all red cedar shingles thereafter imported during 1947, including those at bar.

The plaintiff's contention is that Presidential proclamation No. 2708 completely suspended not only the duty-imposing provisions of the Shingles Quota Act, but also the conditions under which liability to duty arose, i. e., the accrual of the quota of duty-free shingles. Put another way, it is contended that such red cedar shingles as were admitted to free entry during that part of 1947 in which proclamation No. 2708 was in effect, i. e., from January 1, 1947, to August 15, 1947, should not be included in the quota of duty-free red cedar shingles for 1947 under the Shingles Quota Act, but the quota should begin to accrue after the termination of proclamation No. 2708 by the President.

We are unable to agree with this contention, since in our view to give to the proclamation the effect claimed by the plaintiff would be to read into it provisions not there directly or by implication and, indeed, probably not authorized by the statute under which it was made, section 318, *supra*.

A careful examination of the proclamation, as hereinbefore set out, as well as section 318 of the Tariff Act of 1930, likewise hereinbefore set out, reveals that by the proclamation and in connection with the actions of the Housing Expediter and the Secretary of the Treasury, the President of the United States intended and purported, so far as red cedar shingles were concerned, to do only one thing—that is, to confer exemption from duty upon such shingles for a certain period of time.

Section 318 empowers the President under certain circumstances to authorize the importation free of duty of certain articles. It follows that the articles intended to be the subject of the exemption must be articles which would otherwise be subject to duty. Only red cedar shingles in excess of the annual quota provided by the Shingles Quota Act were dutiable, and it is clear to us, therefore, that proclamation No. 2708 could have effect only on such excess-of-quota shingles.

It is true that insofar as red cedar shingles might be entitled to free entry during 1947 under the quota provision of the Shingles Quota Act, proclamation No. 2708 would have only a stand-by effect, but this is a logical result stemming from the law and facts as they existed at that time. Had the quota been exceeded during the term of the emergency in 1947, the proclamation would have acted to accord duty-free status to excess-of-quota shingles. As a matter of fact, the quota was not exceeded during the term of the emergency in 1947, and the termination proclamation restored the pre-proclamation conditions.

Plaintiff argues that it was the purpose of proclamation No. 2708 "to make more shingles free," that is to say, that the red cedar shingles intended to be made free of duty under the proclamation were to be in addition to any which would be free under any other provision of law, and the following statement in the proclamation is referred to in support of that argument:

WHEREAS it is imperative that immediate action be taken on a temporary basis to increase the available supplies of timber, lumber, and lumber products for housing purposes.

Plaintiff's counsel has underscored the words "to increase the available supplies" as pointing to the purpose of the proclamation, and argues that the proclamation would have no effect of *increasing* available supplies of timber, lumber, and lumber products for housing purposes during 1947 if the red cedar shingles imported during the 1947 effective period of the proclamation were deducted from the duty-free quota under the Shingles Quota Act.

We think this argument overlooks the words "temporary basis" in the statement quoted, as well as the entire tenor and circumstances of the proclamation. It was the purpose of the proclamation to effect duty-free status for, among other things, red cedar shingles *during the time the proclamation should be in force.* There is absolutely nothing to show that it was intended to have any effect upon the duty status of shingles after it had been terminated. Even under the plaintiff's theory the authorization to import such shingles duty-free would not have increased the available supply *during* the term of the proclamation, but would have increased the supply *after* that term had ended.

The plaintiff's theory of the case is based upon a so-called paramountcy of proclamation No. 2708 over the Shingles Quota Act. It is our view that the two provisions of law conflicted only insofar as the latter might impose a duty upon shingles made free of duty by the former, and it is only to that extent that the proclamation was paramount to the Shingles Quota Act.

We are satisfied that the contentions of the plaintiff are without merit and that duty under the Shingles Quota Act was properly assessed on the merchandise at bar by the collector. The protest is therefore overruled, and judgment will issue accordingly.