(C. D. 1375)

BORDER BROKERAGE COMPANY *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 29, 1951)

*Lawrence, Tuttle & Harper* (*George R. Tuttle* of counsel) for the plaintiff.

*Charles J. Wagner,* Acting Assistant Attorney General (*Richard E. FitzGibbon,* special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

MOLLISON, Judge: On October 20, 1947, the plaintiff herein, as agent for various principals, made entry at the port of Blaine, Wash., of certain imported red cedar shingles. Duty was assessed thereon by the collector of customs at the rate of 25 cents per square by virtue of the act of July 1, 1940· (54 Stat. 708, 19 U. S. C. § 1332a), and the Presidential proclamation issued under authority thereof, reported in 76 Treas. Dec. 76, T. D. 50224, it having been determined that the quota of such shingles entitled to free entry during the calendar year 1947 under the aforementioned provisions of law had been exhausted on September 23, 1947.

It is claimed by the plaintiff (1) that in view of Presidential proclamation No. 2708, reported in T. D. 51565, the quota of imported red cedar shingles entitled to exemption from duty during the calendar year 1947 was not exhausted on October 20, 1947, when the importations at bar occurred, and (2) that the Presidential proclamation reported in T. D. 50224 was authority only for assessment of duty during the year 1940, and that no Presidential proclamation was issued under authority of the act of July 1, 1940, which authorized the assessment of duty on shingles during the calendar year 1947.

The protest has been submitted for decision upon stipulation of counsel reading as follows:

\*        \*        \*        \*        \*        \*        \*

1)   This protest relates to red-cedar shingles imported from Canada and entered for consumption at the subport of Blaine on October 20, 1947.

2)   The quantity of such imported shingles entered or withdrawn for consumption during the calendar year 1947 was 1,941,427 squares, and of that quantity 1,169,379 squares were imported not later than August 15, 1947, the date when Proclamation 2708, October 25, 1946, 3 CFR 1946 supp., p. 74, TD 51565, was terminated by Proclamation 2735, 3 CFR 1947 supp., p. 50.

3)   The quantity of red-cedar shingles entitled to exemption from the duty of 25 cents per square imposed by the Shingles Quota Act of July 1, 1940, 54 Stat. 708, 19 USC 1332a, TD 50224, as ascertained by the Tariff Commission and reported to the Secretary of the Treasury for the calendar year 1947, was 1,380,300 squares, as set forth in TD 51658, and that quantity had been imported and entered for consumption or withdrawn from warehouse for consumption by 8 a. m., Pacific standard time, September 23, 1947.

4)   All red-cedar shingles imported during 1947 after the hour and day last stated above were directed by the Treasury Department to be subjected to duty at 25 cents per square under said quota act, and the shingles covered by this protest were accordingly assessed at that rate.

Insofar as plaintiff's first claim as noted above is concerned, counsel for the parties have recognized and conceded in the briefs filed in their behalf that the issues and facts in the case at bar are the same in all material respects as those which were involved in the case of *Border Brokerage Company* v. *United States*, the decision in which case is

reported in 24 Cust. Ct. 44, C. D. 1205. No further arguments concerning that claim were presented in the briefs filed herein, and, as our views remain unchanged, the decision in that case, adverse to the plaintiff's claim, is adopted as dispositive of the issues raised by plaintiff's first claim as noted above. For the sake of brevity, the language of the opinion filed in that case will not be repeated here, but it is incorporated herein by reference as though set out in full.

Turning, therefore, to a consideration of plaintiff's alternative claim as noted above, examination of the brief filed on behalf of the plaintiff shows that it is based upon the contention that action by the President of the United States in the form of approval of the report of the Tariff Commission and the issuance and filing of a proclamation is a condition precedent *for each year* to the establishment of an annual quota of duty-free red cedar shingles and the imposition of duty on excess-of-quota shingles under the act of July 1, 1940, *supra.*

The defendant contends, *contra,* that the language and intent of the said act contemplate that the President shall be required to act but *once,* and that once that action has been performed, the act itself provides for the fixing of the annual quota and the imposition of duties on excess-of-quota shingles for a period, as set forth in the act—

* * * so long as any trade agreement entered into under the authority of section 350 of the Tariff Act of 1930, as amended, shall be in effect with respect to the importation into the United States of red cedar shingles.

And it is pointed out that the Canadian Trade Agreement, containing a provision with respect to the importation into the United States of red cedar shingles, was in effect from the time of enactment of the act of July 1, 1940, *supra,* up to and during the time of the importation at bar.

It is apparent that we must look to the language, and the circumstances surrounding the enactment, of the act of July 1, 1940, *supra,* to determine which of the two contentions is correct.

As we have pointed out heretofore in the *Border Brokerage Company* case, *supra,* paragraph 1760 of the Tariff Act of 1930, as enacted, provided for free entry of wood shingles. The so-called First Canadian Trade Agreement, reported in T. D. 48033, and effective January 1, 1936, reserved to the United States the right to impose semiannual import quotas on red cedar shingles equal to 25 per centum of the combined domestic shipments and imports during the preceding 6-month period.

The right thus reserved was implemented by section 811 of the Revenue Act of 1936 (49 Stat. 1746), and pursuant to the provisions thereof semiannual quotas were fixed by the President, beginning with the first 6-month period of 1937. See T. D.'s 48892, 49184, 49449, 49680, and 49805. The right reserved, it will be noted, did not

affect the duty-free status of imported shingles, but operated to restrict the quantity thereof which might be imported during any given half year.

Apparently this arrangement was not entirely satisfactory, for in the Second Canadian Trade Agreement, reported in T. D. 49752, and effective January 1, 1939, the provisions with respect to red cedar shingles of the First Canadian Trade Agreement were superseded by those contained in the following proviso:

*Provided,* That the United States reserves the right to impose a customs duty, not exceeding 25 cents per square, on any red cedar shingles which may be entered, or withdrawn from warehouse, for consumption in any calendar year after 1938 in excess of a quantity to be specified by the United States, which quantity shall not be less than 30 per centum of the annual average for the preceding three calendar years of the combined total of the quantity of red cedar shingles shipped by producers in the United States and of the quantity of such shingles entered, or withdrawn from warehouse, for consumption (for the purposes of this agreement, such combined total for the calendar year 1936 shall be considered as 7,526,056 squares).

On May 14, 1940, a bill, H. R. 9765, 76th Congress, 3d Session, was introduced in the House of Representatives—

* * * to provide for exercising the right with respect to red-cedar shingles reserved in the trade agreement concluded November 17, 1938, between the United States of America and Canada, and for other purposes; * * *.

Upon passage by both Houses of Congress and approval by the President, the bill ultimately became the act of July 1, 1940, hereinbefore referred to. For ready reference, its complete text is set forth in the margin.[1]

---

[1] AN ACT

To provide for exercising the right with respect to red cedar shingles reserved in the trade agreement concluded November 17, 1938, between the United States of America and Canada, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That (a) the United States Tariff Commission is hereby directed to conduct an investigation as soon as practicable after the close of the calendar year 1939 and each calendar year thereafter, for the purpose of ascertaining the quantities of red cedar shingles shipped by producers in the United States and the quantities of imported red cedar shingles entered for consumption, or withdrawn from warehouse for consumption, during each of the three calendar years immediately preceding any such investigation.

(b) If the Commission finds, on the basis of an investigation under subdivision (a) of this section, that in any calendar year after 1938 the quantity of imported red cedar shingles entered for consumption, or withdrawn from warehouse for consumption, was in excess of 30 per centum of the combined total for such year of the respective quantities ascertained in such investigation, it shall so report to the President. If the President approves the report of the Commission, he shall so proclaim, and on and after the day following the filing of such proclamation with the Division of the Federal Register and so long as any trade agreement entered into under the authority of section 350 of the Tariff Act of 1930, as amended, shall be in effect with respect to the importation into the United States of red cedar shingles, there shall be a duty upon imported red cedar shingles entered for consumption, or withdrawn from warehouse for consumption, in any calendar year in excess of 30 per centum of the annual average for the preceding three calendar years of the combined total of the quantity of such shingles shipped by producers in the United States and of the quantity of such imported shingles entered for consumption, or withdrawn from warehouse for consumption. The rate of such duty shall be 25 cents per square. Any duty imposed under this Act shall be treated for the purposes of all provisions of law relating to customs revenue as a duty imposed by the Tariff Act of 1930, and shall not apply to shingles entered for consumption before the duty becomes applicable.

(c) The quantity of red cedar shingles entitled to exemption from any duty imposed pursuant to this Act shall be ascertained for each quota period by the Commission and reported to the Secretary of the Treasury.

The provisions of the act may be summarized as follows: Upon the happening of a certain event (to wit, that in any calendar year after 1938 the quantity of red cedar shingles imported should exceed 30 per centum of the combined total of domestic shipments and imports), and upon the completion of certain administrative details (to wit, finding and report by the Tariff Commission, and proclamation by the President), a formula for the determination of annual quotas of duty-free red cedar shingles was to be carried out, and a duty was to be imposed upon excess-of-quota shingles.

It is argued by the plaintiff that it was the intent of the statute to require the assessment of duty only in those years when the competitive conditions in any one of the three previous calendar years were as defined by the Congress, i. e., when in any calendar year after 1938 imports exceeded 30 per centum of the combined total of domestic shipments and imports for such year. Plaintiff points out that the quota-fixing and duty-imposing elements of the act were not to be applied at once upon enactment of the act, but were conditioned upon the happening of a certain event in any calendar year after 1938, which event, once having happened, might not happen in other or subsequent calendar years. It is therefore contended that a finding by the Tariff Commission of the happening of the event, a report to the President, approval of the report by the President, and proclamation thereof, are necessary conditions precedent for each calendar year before the quota-fixing and duty-imposing elements of the statute come into operation.

It is undoubtedly true that if the act were read only from its first word up to and including the word "proclaim" in subdivision (b) thereof, there might be some question as to whether it was intended that there be a proclamation by the President each year when the condition was fulfilled, or whether it was intended that if the condition was fulfilled in any one year the proclamation thereof would be sufficient for the subsequent operation of the act, regardless of the fact situation in other calendar years. If so read, the language is somewhat ambiguous. However, we think that when the statute is read as a whole, the ambiguity disappears and it clearly shows that it was intended that if the condition (that imports of red cedar shingles exceed 30 per centum of the combined total of domestic shipments and imports) should be fulfilled in any one calendar year after 1938, and the administrative details of report and proclamation.be performed, the quota-fixing and duty-imposing elements of the act would come into operation *and remain in operation for a period of time measured only by the existence in effect of a trade agreement provision with respect to red cedar shingles*, regardless of whether in any subsequent calendar

year or years the actual fact might be that the imported quantity might be 30 per centum or less than the combined total of domestic shipments and imports.

Statutes are to be construed and interpreted in their entirety. The possible ambiguity of the first portion of the act here in question is resolved when the latter portion is read and considered and the meaning of the whole statute becomes clear. Cf. Statutes and Statutory Construction, by J. G. Sutherland, 3d edition, by Horack, where, in volume 2, § 4703, under the caption " 'Whole statute' interpretation," the following is said:

The practical inquiry in litigation is usually to determine what a particular provision, clause, or word means. To answer it one must proceed as he would with any other composition—construe it with reference to the leading idea or purpose of the whole instrument. A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole. * * *

The latter portion of the statute provides that upon the happening of the event, and the completion of the administrative details of finding, report, and proclamation, then—

* * * *on and after* the day following the filing of such proclamation with the Division of the Federal Register *and so long as* any trade agreement entered into under the authority of section 350 of the Tariff Act of 1930, as amended, shall be in effect with respect to the importation into the United States of red cedar shingles, there shall be a duty, * * *. [Italics added.]

The words "on and after" and "and so long as" are words explicitly denoting the beginning, duration, and end of the period within which duty is to be imposed and are not qualified by anything which would indicate that the end of the calendar year in which the proclamation was made and filed would terminate the duty and that another finding, report, and proclamation would be required to impose it again.

It is quite obvious that the purpose of the trade agreement reservation was to maintain a percentage relationship between the number of squares of red cedar shingles consumed annually in the United States (as represented by the combined total of those domestically shipped and those imported) and the number of squares of such shingles which would be permitted to be imported duty-free, and in the preamble of the act it is its declared intent "to exercise" the right so reserved. The provisions for finding, report, and proclamation were, so to speak, to "trigger" the operation of the act, and, once set in operation, the quota-fixing and duty-imposing elements of the act were to remain in effect "so long as any trade agreement" provisions should permit it.

The protest is therefore overruled, and judgment will issue accordingly.