BORDER BROKERAGE CO. *v.* UNITED STATES (No. 4723)[1]

United States Court of Customs and Patent Appeals, March 11, 1953

*Lawrence, Tuttle & Harper* (*Lawrence A. Harper, Frank L. Lawrence,* and *George R. Tuttle* of counsel) for appellant.

*Charles J. Wagner,* Acting Assistant Attorney General (*Richard E. FitzGibbon,* special attorney, of counsel), for the United States.

[1] C. A. D. 515.

# 186

Before GARRETT, Chief Judge, O'CONNELL, WORLEY, and JACKSON (retired), Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, C. D. 1375, overruling appellant's protest against the action of the Collector of Customs at the port of Seattle who classified the imported merchandise here in issue as "shingles of wood," dutiable at the rate of 25 cents per square,[1] under the provisions of the Shingles Quota Act of 1940. Appellant claimed the merchandise should have been admitted free of duty under paragraph 1760 of the Tariff Act of 1930 because the annual quota for red cedar shingles fixed by Presidential Proclamation No. 2708, T. D. 51565, for the calendar year 1947 "was not exceeded during that year."

The protest was submitted for decision upon a stipulation by counsel which read as follows:

1. This protest relates to red-cedar shingles imported from Canada and entered for consumption at the subport of Blaine on October 20, 1947.

2. The quantity of such imported shingles entered or withdrawn for consumption during the calendar year 1947 was 1,941,427 squares, and of that quantity 1,169,379 squares were imported not later than August 15, 1947, the date when Proclamation 2708, October 25, 1946, 3 CFR 1946 supp., p. 74, T D 51565, was terminated by Proclamation 2735, 3 CFR 1947 supp., p. 50.

3. The quantity of red-cedar shingles entitled to exemption from the duty of 25 cents per square imposed by the Shingles Quota Act of July 1, 1940, 54 Stat. 708, 19 USC 1332a, T D 50224, as ascertained by the Tariff Commission and reported to the Secretary of the Treasury for the calendar year 1947, was 1,380,300 squares, as set forth in TD 51658, and that quantity had been imported and entered for consumption or withdrawn from warehouse for consumption by 8 a. m., Pacific standard time, September 23, 1947.

4. All red'-cedar shingles imported during 1947 after the hour and day' last stated above were directed by the Treasury Department to be subjected to duty at 25 cents per square under said quota act, and the shingles covered by this protest were accordingly assessed at that rate.

Paragraph 1760 of the Tariff Act of 1930 provided free entry for shingles of wood. The Canadian Trade Agreement, T. D. 49752, which became effective January 1, 1939, provided, however, that the duty-free status of wood shingles should be continued on a quantitative and conditional basis:

*Provided,* That the United States reserves the right to impose a customs duty, not exceeding 25 cents per square, on any red cedar shingles which may be entered, or withdrawn from warehouse, for consumption in any calendar year after 1938 in excess of a quantity to be specified by the United States, which quantity shall not be less than 30 per centum of the annual average for the preceding three calendar years of the combined total of the quantity of red cedar shingles shipped by producers in the United States and of the quantity of such

---

[1] As noted in appellant's brief and according to the Standard Dictionary, a "square" is "an area of 100 square feet, or 10 feet square of flooring, roofing, etc."

shingles entered, or withdrawn from warehouse, for consumption (for the purposes of this agreement, such combined total for the calendar year 1936 shall be considered as 7,526,056 squares).

To provide for exercising the right with respect to the red shingles reserved in the described trade agreement, the Shingles Quota Act of 1940 was passed by both Houses of Congress and approved by the President. The legislation thus enacted supplied the formula by which the determination of the annual quotas of duty-free red shingles imported from Canada was to be calculated and carried out.[2]

The duty here in question was accordingly assessed by the collector on the basis that the annual quota of shingles entitled to free entry from Canada in compliance with the proclamation by the President of August 26, 1940, T. D. 50224, had been exhausted on September 23, 1947, prior to the date of the involved entries.

The ultimate issue presented makes it necessary to revert to the Veterans' Emergency Housing Act of May 22, 1946, based upon the existence of "an unprecedented emergency shortage of housing, particularly for veterans of World War II and their families."

To remedy that condition, and as stated in section (a) of said Act:

This requires during the next two years a house-construction program larger than ever before. The first step toward such a program is to overcome the serious shortages and bottlenecks with respect to building materials, to expedite the production of such materials * * *.

A Housing Expediter was appointed in accordance with the terms of the statute, who in turn designated certain lumber products, including red cedar shingles, as commodities necessary to relieve the existing shortage of building materials for the construction of housing for veterans. The President thereupon by proclamation No. 2708, promulgated under the provisons of section 318 of the Tariff Act of 1930, directed the Secretary of the Treasury to permit free entry of the products designated by the Housing Expediter, T. D. 51565. This proclamation became effective October 25, 1946. On June 28, 1947, the President by another proclamation, No. 2735, amended proclamation No. 2708 to provide that it should terminate August 15, 1947.

The housing legislation of 1946 and Presidential proclamation No. 2708 designed to make the law effective were remedial and humanitarian in purpose and as such should be liberally construed and not

---

[2] The Act of 1940 provided:

(a) the United States Tariff Commission is hereby directed to conduct an investigation as soon as practicable after the close of the calendar year 1939 and each calendar year thereafter, for the purpose of ascertaining the quantities of red cedar shingles shipped by producers in the United States and the quantities of imported red cedar shingles entered for consumption, or withdrawn from warehouse for consumption, during each of the three calendar years immediately preceding any such investigation.

(b) If the Commission finds, on the basis of an investigation under subdivision (a) of this section, that in any calendar year after 1938 the quantity of imported red cedar shingles entered for consumption, or withdrawn from warehouse for consumption, was in excess of 30 per centum of the combined total for such year of the respective quantities ascertained in such investigation, it shall so report to the President. * * *

applied in a narrow and grudging manner. *Tennessee Coal Co.* v. *Muscoda Local*, 321 U. S. 590, 597; *Klein, Messner Co.* v. *United States*, 13 Ct. Cust. Appls. 273, 277, T. D. 41212.

Appellant contends, first, that the quota of red cedar shingles entitled to exemption from duty during the calendar year 1947 was not exhausted on October 20, 1947 when the importations here in issue occurred. Appellant asserts that the Shingles Quota Act of 1940 was entirely suspended while proclamation No. 2708 was in effect from October 25, 1946 to August 15, 1947, and therefore the quota for 1947 did not commence to accrue prior to the latter date, if indeed it accrued at all during 1947:

The intent of the proclamation was to carry out the remedial and humanitarian purposes of two emergency statutes: tariff section 318 and the veterans' housing act. This implicates the principle of liberal application above cited. Those purposes are defeated by selection of the less beneficial of two possible constructions, and that is especially true here, where the more beneficial one is in literal accord with the language of TD 51565: "Red cedar shingles, such as are provided for in paragraph 1760 * * *". Under such a construction of proclamation 2708 the exception of red cedar shingles would be fully effective throughout 1947 instead of being inert and a nullity.

The first contention embodied here in appellant's case was separately tried by the Customs Court and a judgment was rendered adverse to appellant's stated position. *Border Brokerage Company* v. *United States*, 24 Cust. Ct. 44, C. D. 1205. There the Customs Court in its disposition of the case properly held that the purpose of the action taken by Congress and the President with a view to relieve the housing shortage for veterans was taken on a temporary basis in 1946 to confer an exemption from duty upon shingles otherwise dutiable in excess of the annual quota provided by the Shingles Quota Act of 1940.

The purpose of proclamation No. 2708, the court held in effect, was not to wholly supplant the Shingles Quota Act of 1940, but to supplement it with duty-free status for additional shingles which otherwise would be dutiable during the time the proclamation was in force. The reasoning of the court led to the effective observation:

Even under the plaintiff's theory the authorization to import such shingles duty-free would not have increased the available supply *during* the term of the proclamation, but would have increased the supply *after* that term had ended. [Italics quoted.]

A remedial statute must be liberally construed but not to the extent where the result produced is absurd and detrimental to the national economy. *U. S.* v. *Amer. Trucking Ass'ns.*, 310 U. S. 534, 542–544; *White* v. *United States*, 305 U. S. 281, 292.

The issues in the case at bar are otherwise the same in all material respects. Appellant further contends, however, that the procedural requirements prescribed by the Shingles Quota Act of 1940 were not

complied with by the President and therefore no authority existed for the assessment of duty upon shingles imported from Canada during 1947.

Specifically, appellant asserts here as it did before the Customs Court that the Presidential proclamation T. D. 50224, dated August 26, 1940, was authority for the assessment of duty on shingles imported during the year 1940 but no subsequent year; and that in order for any duty to become effective under the Shingles Quota Act of 1940 for any subsequent year, including 1947, it was necessary for the President to promulgate a separate proclamation for each calendar year subsequent to 1940.

It is conceded that no such proclamation was issued for 1947 or any other year subsequent to 1940. The adverse judgment on appellant's second point constitutes one of the two elements which form the basis of this appeal.

The trial court collectively set forth in the decisions which have been rendered the substance or pertinent text of the involved provisions of the Tariff Act of 1930, the Canadian trade agreements, the Shingles Quota Act of 1940, the Veterans' Emergency Act, the various proclamations, departmental rulings, etc. Accordingly, we deem it unnecessary to reprint the entire pattern of legislative material drawn to meet the needs of a major enterprise.

The President in the issuance of his proclamation T. D. 50224 approved the report of the United States Tariff Commission, to the end that the duty provided in the Act of 1940 "shall be imposed upon those imported shingles *as are subject to duty under that act,*" which are those in excess of the prescribed quantity annually imported. It is explicitly stated in the Act:

* * * If the President approves the report of the Commission, he shall so proclaim, and on and after the day following the filing of such proclamation with the Division of the Federal Register and so long as any trade agreement entered into under the authority of section 350 of the Tariff Act of 1930, as amended, shall be in effect with respect to the importation into the United States of red cedar shingles, there shall be a duty upon imported red cedar shingles entered for consumption, or withdrawn from warehouse for consumption, in any calendar year in excess of 30 per centum of the annual average for the preceding three calendar years of the combined total of the quantity of such shingles shipped by producers in the United States and of the quantity of such imported shingles entered for consumption, or withdrawn from warehouse for consumption.

The language and intent of the legislation appear to contemplate that the President shall be required to act but once in the establishment of a quota, and having done so, the act itself provides for the fixing of the annual quota and the imposition of duty for quantities in excess of the quota. The Customs Court took great pains to clarify its position:

\* \* \* However, we think that when the statute is read as a whole \* \* \* it clearly shows that it was intended that if the condition (that imports of red cedar shingles exceed 30 per centum of the combined total of domestic shipments and imports) should be fulfilled in any one calendar year after 1938, and the administrative details of report and proclamation be performed, the quota-fixing and duty-imposing elements of the act would come into operation *and remain in operation for a period of time measured only by the existence in effect of a trade agreement provision with respect to red cedar shingles,* regardless of whether in any subsequent calendar year or years the actual fact might be that the imported quantity might be 30 per centum or less than the combined total of domestic shipments and imports.

\*      \*      \*      \*      \*      \*      \*

\* \* \* The provisions for finding, report, and proclamation were, so to speak, to "trigger" the operation of the act, and, once set in operation, the quota-fixing and duty-imposing elements of the act were to remain in effect "so long as any trade agreement" provisions should permit it.   [Italics quoted.]

Additional points and authorities cited by counsel do not conflict with our conclusion that the decisions of the United States Customs Court in the involved litigation were correct and should be *affirmed.*

WILLIAM P. COLE, JR., Judge, having participated below, disqualified himself to sit in this case, and JOSEPH R. JACKSON, Judge, retired, was recalled to participate herein, pursuant to section 294 (c) and (d), Title 28, United States Code.